**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 11-cv-02484-CMA-BNB

BENJAMIN GODFREY CHIPPS, SR.,

    Plaintiff,

v.

UNITED STATES OF AMERICA,

    Defendant.

---

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**

---

This case arises under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2671–80. The matter before the Court is Defendant's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1). (Doc. # 7.) For the following reasons, the motion is denied.

## I. BACKGROUND

**A.    FACTS**

Between September 2005 and February 2009, Plaintiff was a prisoner at the Federal Correctional Institution ("FCI") in Florence, Colorado and, later, at the FCI in Sandstone, Minnesota. (Doc. # 1 at 2.) On September 3, 2005, Plaintiff sought medical attention at FCI Florence's clinic, complaining of pain in his right flank and groin and blood in his urine. (*Id.*) Medical staff diagnosed him with kidney stones and gave him medication. (*Id.*) Plaintiff returned to the clinic on September 8, 2005, with similar

complaints (Doc. # 1 at 2–3), and was diagnosed with kidney stones and a urinary tract infection (Doc. # 8-1).  When Plaintiff returned to the clinic for a check-up on September 20, 2005, his symptoms were no longer present.  (Doc. # 8-1.)  A urine sample taken from Plaintiff in October 2005 revealed the continued presence of blood (Doc. # 1 at 3), but Plaintiff was not told the results (Doc. # 8-1).  No healthcare provider performed testing to determine the cause of the blood from 2005 until 2009.  (Doc. # 1 at 3.)  Meanwhile, Plaintiff was transferred to the FCI in Sandstone.  (*Id.*)  Plaintiff visited the medical clinics in Florence and Sandstone several times from 2007 through 2009, but for unrelated medical problems.  (Doc. # 1; Doc. # 7-1.)

On February 9, 2009, Plaintiff's symptoms returned for the first time since 2005.  (Doc. # 8-1.)  He reported to the clinic in Sandstone, complaining of an inability to urinate and a recent episode of bloody urine.  (*Id.*)  A urinalysis performed at that time showed a large amount of blood in Plaintiff's urine, and a CT scan revealed bilateral kidney masses.  (*Id.)* On February 17, 2009, Plaintiff's right kidney was removed.  (*Id.*)  A pathology exam revealed that he had kidney cancer.  (*Id.*)  Plaintiff first found out that he had kidney cancer on February 17, 2009.  (Doc. # 8-1.)  In April 2009 part of Plaintiff's left kidney was removed, and a pathology exam revealed that it, too, was cancerous.  (Doc. # 1 at 4.)

Plaintiff submitted an administrative claim to the Federal Bureau of Prisons ("BOP"), dated February 3, 2011, claiming personal injury for the loss of his kidneys and for increased risk of death or disability from the advancement of kidney cancer.  (Doc.

# 7-1.)  The BOP received his claim on February 15, 2011.  (*Id.*)  The claim, which Plaintiff submitted on a Standard Form 95,[1] listed the "Date and Day of Accident" as four separate dates in September and October 2005 on which Plaintiff had visited the Florence clinic and blood was confirmed to be in his urine but no "workup" had been performed.  (*Id.*)

**B.     PROCEDURAL HISTORY**

On September 21, 2011, Plaintiff filed a claim against the United States alleging negligence in its diagnosis and treatment of his kidney condition.  Specifically, Plaintiff alleged negligence for the following: (1) "failing to properly work up" the cause of blood in his urine and (2) failing "to construct medical records in a proper manner."  (Doc. # 1 at 4.)

On January 3, 2012, Defendant filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1), arguing that this Court does not have subject-matter jurisdiction because Plaintiff's claim is time-barred by the FTCA's statute of limitations, 28 U.S.C. § 2401(b).  (Doc. # 7.)  On January 20, 2012, Plaintiff responded (Doc. # 8), and on January 27, 2012, Defendant filed its reply (Doc. # 12).

## II.  STANDARD OF REVIEW

A Rule 12(b)(1) motion to dismiss may take the form of a facial attack on the complaint's allegations, or, as here, it may challenge the facts on which subject matter

---

[1]  A Standard Form 95 is a form provided by the Department of Justice for presenting claims under the FTCA.  *See* http://www.justice.gov/civil/common/docs-forms.html.

jurisdiction depends.  *Holt v. United States*, 46 F.3d 1000, 1002–1003 (10th Cir. 1995).

As the Tenth Circuit said in *Holt*:

> When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations.  A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).  In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

*Id.* at 1003.  When the resolution of the jurisdictional question is "intertwined with the merits of the case," however, a court is required to convert a Rule 12(b)(1) motion into a Rule 12(b)(6) motion or a Rule 56 motion for summary judgment.  *Id.*

Following *Holt*, the Tenth Circuit cited with approval a First Circuit case holding that the FTCA statute of limitations contained in 28 U.S.C. § 2401(b) does **not** create a jurisdictional question intertwined with the merits of the case.  *Trobaugh v. United States*, 35 Fed. Appx. 812, 814 (10th Cir. 2002) (unpublished) (citing *Gonzalez v. United States*, 284 F.3d 281, 287 (1st Cir. 2002)).  The Tenth Circuit approved of the First Circuit's reasoning that "[t]he determination of whether the claim is time-barred bears no relationship to whether the plaintiff can make out a showing of negligence on the merits of the case."  *Id.*  *See also Cutting v. United States*, No. 07-cv-02053, 2008 WL 2721787, at *1 (D. Colo. July 10, 2008) (unpublished).

The Court rejects Plaintiff's request to adopt a standard of review applicable to a motion for summary judgment.  Defendant's 12(b)(1) motion is premised on the assertion that Plaintiff did not timely file an administrative claim as required by the

FTCA.  Plaintiff's underlying claim is that Defendant was negligent in its medical treatment of him.  These issues are separate and, thus, the Court concludes that the jurisdictional question is not intertwined with the merits of the case.  Accordingly, it will apply the Rule 12(b)(1) standard as set forth in *Holt*.

### III.  DISCUSSION

In the FTCA, Congress "consented to suits against the United States for certain torts committed by federal employees while acting within the scope of their employment."  *Woodruff v. Covington*, 389 F.3d 1117, 1125 (10th Cir. 2004).  As a preliminary matter, "[t]imeliness of suit is one of the conditions of the government's waiver of sovereign immunity under the FTCA, and the district court lacks subject matter jurisdiction to proceed under the FTCA if a plaintiff fails to satisfy the FTCA's timing requirements set forth in [28 U.S.C.] § 2401(b)."  *In re Franklin Sav. Corp.*, 385 F.3d 1279, 1287 (10th Cir. 2004).  Under these requirements, "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal Agency within two years after such claim accrues . . . ."  28 U.S.C. § 2401(b).

Determination of when a claim accrues "is a matter of federal, not state, law."  *Kynaston v. United States*, 717 F.2d 506, 508 (10th Cir. 1983).  Under the FTCA, "a cause of action accrues at the time the plaintiff is injured, or, in a medical malpractice action, when the plaintiff has discovered both his injury and its cause."  *Id*.; *see also United States v. Kubrick*, 444 U.S. 111, 120 (1979).  The Tenth Circuit has held recently that "in misdiagnosis cases, the relevant injury for accrual is the injury that is caused

by the misdiagnosis and lack of treatment, not the pre-existing injury that brought the patient to the doctor's door." *Harvey v. United States*, 685 F.3d 939, 949 (10th Cir. 2012). In such a case, "it is only when the patient becomes aware or through the exercise of reasonable diligence should have become aware of the development of a pre-existing problem into a more serious problem that his cause of action can be said to have accrued for purposes of section 2401(b)." *Id.* (quotation marks and citations omitted).

In the instant case, Defendant argues that Plaintiff "admits that his injury occurred between September and October 2005" because Plaintiff listed four separate dates during those months as the "Date and Day of Accident" on his Standard Form 95. (Doc. # 7-1.) The Court is not persuaded.

To begin with, the relevant inquiry is not when an injury occurs but, rather, when the related claim accrues. Further, as already indicated, *Harvey* makes clear that in misdiagnosis cases, determining when the claim accrues depends on awareness that misdiagnosis and lack of treatment has allowed the condition to worsen, not on the presence of the symptoms that initially led the patient to seek medical attention. In this case, therefore, the relevant injury is Plaintiff's development of kidney cancer, not his pain or the presence of blood in his urine during 2005. Additionally, Defendant cites no Tenth Circuit authority holding that the "Date and Day of Accident" listed on a Standard Form 95 equates to the date of accrual in a misdiagnosis case, nor is the Court aware

of any.[2]  Defendant does not dispute that Plaintiff learned that he had kidney cancer on February 17, 2009.  Only as of this date did Plaintiff know of his injury and its possible cause.

Defendant further argues that Plaintiff's symptoms continued to manifest themselves in 2007 and 2009, and, therefore, that he had an affirmative duty to exercise reasonable diligence to inquire about the persistence of his symptoms.  But this argument misconstrues the facts as available on the present record.  Plaintiff was seen in September and October 2005 by medical staff at FCI Florence for pain and blood in his urine.  (Doc. # 8-1.)  Medical staff told him that the cause was kidney stones and a urinary tract infection.  (*Id.*)  His symptoms had subsided by September 20, 2005, at which point medical staff told him that his problem was resolved.  (*Id.*)  Although Plaintiff did return to the clinics at FCI Florence and FCI Sandstone between 2007 and 2009, the record does not indicate what prompted those visits.  (Doc. # 1; Doc. # 7-1.)  The next time Plaintiff noticed blood in his urine was in February 2009, at which point he reported to the clinic in Sandstone.  (Doc. # 1; Doc. # 8-1.)  Based on the record, after

---

[2]  Defendant cites *Dowdy v. Hercules*, No. 07-CIV-2488, 2010 WL 169624, at *5 (E.D.N.Y. Jan. 15, 2010) (unpublished), as authority for the proposition that the date of the incident giving rise to a claim listed on a Standard Form 95 is the date of injury for accrual purposes.  In addition to *Dowdy* being non-binding precedent, its facts are distinguishable from those in this case.  In *Dowdy*, the plaintiff listed on his Standard Form 95 the date of the incident giving rise to his claim as June 20, 2004, but did not file the form until April 2007.  (*Id.*)  Although the court held that the plaintiff was required to submit his administrative claim by June 20, 2006, the Court also concluded that the plaintiff was aware of the existence and cause of his injuries by late 2004 (*id*) – *i.e.*, more than two years before he submitted his claim.  Here, as indicated in the text above, Plaintiff was unaware of the existence and cause of his injury more than two years before he submitted his claim.

7

his initial problems in 2005, Plaintiff had no indication until 2009 that there was anything wrong with his kidneys.  Moreover, once his symptoms reappeared in February 2009, Plaintiff promptly sought attention at the Sandstone clinic.  Accordingly, based on the record as it is currently developed, the Court cannot conclude that Plaintiff should have known that, as he alleges, the condition for which he had sought treatment was worsening, much less that he was developing kidney cancer.  Nor can the Court conclude that Plaintiff had a duty to inquire about other potential causes of his condition, in light of his symptoms having abated for so long.

Lastly, Defendant argues in the alternative that Plaintiff's claim accrued on February 9, 2009, when Plaintiff returned to the Sandstone clinic with the same symptoms he had suffered in 2005.  Again, however, the Court disagrees.  That Plaintiff was suffering from these symptoms does not mean that he knew or should have known that he had been injured – *i.e.*, that his prior condition had developed into a worse one, as he claims, especially since the record does not disclose that Plaintiff's symptoms presented themselves in a different or more severe way in February 2009 than they had in the past.  Accordingly, the Court concludes that the earliest Plaintiff could have known that he was injured, and therefore the earliest that his claim could have accrued, was February 17, 2009, when he was informed that he had kidney cancer.[3]

---

[3] The Government further asserts that Plaintiff presented his administrative claim too late because the BOP did not receive it until February 15, 2011.  But because Plaintiff's claim accrued on February 17, 2009, less than two years prior to when the BOP received his claim, this argument is unavailing.

Plaintiff filed, and the BOP received, his administrative claim within two years of February 17, 2009. Accordingly, Plaintiff's claim is not time-barred by 28 U.S.C. § 2401(b).

## IV.  CONCLUSION

For the foregoing reasons, it is ORDERED that Defendant's Motion to Dismiss (Doc. # 7) be DENIED.

DATED:  September   24  , 2012

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge