**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 11-cv-02484-CMA-BNB

BENJAMIN GODFREY CHIPPS, SR.,

    Plaintiff,

v.

UNITED STATES OF AMERICA,
    Defendant.

---

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**

---

This matter is before the Court on Defendant's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(h)(3).  (Doc. # 34.)  For the following reasons, this Court denies the motion.

## I. BACKGROUND

**A.    FACTS**

Between September 2005 and February 2009, Plaintiff was a prisoner at the Federal Correctional Institution ("FCI") in Florence, Colorado and, later, at the FCI in Sandstone, Minnesota.  (Doc. # 1 at 2.)  On September 3, 2005, Plaintiff sought medical attention at FCI Florence's clinic, complaining about blood in his urine and pain in his right side and groin.  (*Id.*)  Medical staff diagnosed him with kidney stones and gave him medication.  (*Id.*)  Plaintiff returned to the clinic on September 8, 2005, with similar complaints (Doc. # 1 at 2-3) and was diagnosed with kidney stones and a urinary tract infection.  (Doc. # 8-1.)  When Plaintiff returned to the clinic for a check-up on

September 20, 2005, his symptoms were no longer present. (Doc. # 8-1.) A urine sample taken from Plaintiff in October 2005 revealed the continued presence of blood (Doc. # 1 at 3), but Plaintiff was not told about the results. (Doc. # 8-1.) No healthcare provider performed testing to determine the cause of the blood from 2005 until 2009. (Doc. # 1 at 3.) Meanwhile, Plaintiff was transferred to the FCI in Sandstone. (*Id.*) Plaintiff visited the medical clinics in Florence and Sandstone several times from 2007 through 2009 for other medical problems. (Doc. # 1; Doc. # 7-1.)

Plaintiff requested his medical records from the Federal Bureau of Prisons ("BOP") on December 26, 2008. (Doc. # 34-5.) The health clinic at Sandstone received Plaintiff's request on December 29, 2008. (Doc. #34-4 at 2; Doc. #34-5.) The following day, December 30, 2008, Ms. Jaclyn Revier, a Health Information Technician at Sandstone, placed Plaintiff on "call-out" so he could pick-up his medical records. (Doc. 34-4 at 1-2.) The record does not reveal what exactly was contained in these medical records only that they were handed over to Plaintiff on December 30.

On February 9, 2009, Plaintiff's symptoms returned. (Doc. # 8-1.) He reported to the clinic in Sandstone, complaining of an inability to urinate and a recent episode of bloody urine. (*Id.*) A urinalysis performed on February 9, 2009, showed a large amount of blood in Plaintiff's urine and a CT scan performed later that same day detected probable kidney masses. (Doc. # 34-6, at 1-2.) Further, Mr. Pete Bennett, a nurse at Sandstone, entered a clinical encounter administrative note on February, 11, 2009, that Plaintiff was to be treated for bilateral renal cancer. (*Id.* at 3.) There is no indication in the record presented whether Plaintiff knew of this diagnosis on February 11, 2009.

On February 17, 2009, Plaintiff's right kidney was removed. (Doc. # 39-4.) A pathology exam performed on that same date revealed that Plaintiff had kidney cancer. (Doc. # 39-5, at 1.) Plaintiff claims that he first learned that he had kidney cancer on February 17, 2009. (Doc. # 8-1, at 2.) In April 2009, part of Plaintiff's left kidney was removed, and a pathology exam revealed that it, too, was cancerous. (Doc. # 1 at 4.)

When claiming damage, injury, or death, against the federal government, a claimant must submit a form SF-95 to the appropriate agency. Plaintiff submitted this form to the BOP claiming personal injury for the loss of his kidneys and for increased risk of death or disability from the development of kidney cancer. (Doc. #7-1.) The BOP received Plaintiff's SF-95 on February 15, 2011. (Doc. #7-1 at 1).

B.   PROCEDURAL HISTORY

Plaintiff filed a claim against the United States alleging negligence in its diagnosis and treatment of his kidney condition on September 21, 2011. Specifically, Plaintiff alleged negligence for the following: (1) "failing to properly work up" the cause of blood in his urine and (2) failing "to construct medical records in a proper manner." (Doc. # 1 at 4.) Plaintiff alleged that this negligence was a proximate cause of the "worsening" and "spread" of cancer throughout Plaintiff's kidneys. (*Id.*) Plaintiff alleged that these claims arose under the Federal Tort Claims Act or FTCA. *See* 28 U.S.C. § 1346(b)(1).

On January 3, 2012, Defendant filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1), arguing that this Court does not have subject-matter jurisdiction because Plaintiff's claim is time-barred by the FTCA's statute of limitations. *See* 28 U.S.C. § 2401(b). (Doc. # 7.) This Court denied Defendant's Motion to Dismiss on September 24, 2012. (Doc. #14.)

After completing discovery, Defendant filed its current Motion to Dismiss on August 1, 2013.  (Doc. # 34.)  Plaintiff responded on August 22, 2013 (Doc. # 39), and Defended replied on September 4, 2013 (Doc. #40).

## II.  STANDARD OR REVIEW

The Court must dismiss a cause of action if it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006). The issue of subject matter jurisdiction may be raised at any time during the proceedings.  *See McAlester v. United Air Lines, Inc.*, 851 F.2d 1249, 1252 (10th Cir. 1988).  Analytically, a Rule 12(h)(3) motion and a Rule 12(b)(1) motion are the same. *See Berkshire Fashions, Inc. v. M.V. Hakusan II*, 954 F.2d 874, 884 n.3 (3d Cir. 1992) (noting that the distinction between the two motions is that a 12(h)(3) motion "may be asserted at any time and need not be responsive to any pleading of other party").

A Rule 12(b)(1) motion to dismiss may take the form of a facial attack on the complaint's allegations, or, as here, it may challenge the facts on which subject matter jurisdiction depends.  *Holt v. United States*, 46 F.3d 1000, 1002–1003 (10th Cir. 1995). As the Tenth Circuit stated in *Holt*:

> When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations.  A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).  In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

*Id.* at 1003.

4

When the resolution of the jurisdictional question is "intertwined with the merits of the case," however, a court is required to convert a Rule 12(b)(1) motion into a Rule 12(b)(6) motion or a Rule 56 motion for summary judgment. *Id.*

Here, the Court converts Defendant's motion into one for summary judgment under Rule 56 because the submissions of both parties, which include numerous pieces of evidence obtained in discovery, go beyond what is normally considered in deciding a motion to dismiss. *See Lowe v. Town of Fairland, Okl.*, 143 F.3d 1378, 1381 (10th Cir. 1998).

Thus, this Court reviews Defendant's motion under Federal Rule of Civil Procedure 56. Under that Rule, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a). Further, "[i]n deciding whether summary judgment is appropriate, the Court construes all facts and reasonable inferences drawn from the record in the light most favorable to the nonmoving party." *Entek GRB, LLC v. Stull Ranches, LLC*, 937 F. Supp. 2d 1328, 1332 (D. Colo. 2013).

### III. DISCUSSION

#### A. DETERMINING THE DATE AN FTCA CLAIM ACCRUES

By enacting the FTCA, Congress "consented to suits against the United States for certain torts committed by federal employees while acting within the scope of their employment." *Woodruff v. Covington*, 389 F.3d 1117, 1125 (10th Cir. 2004). At the same time, 28 U.S.C. § 2401(b) dictates that "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal Agency within two years after such claim accrues . . . ."

Resolving the disagreement between the parties on this motion requires determining whether there is a genuine dispute that Plaintiff "presented" his claims within two years of when they accrued, such that the claims are not barred under 28 U.S.C. § 2401(b).

As an initial matter, there is no dispute about the date the claim was "presented" for purposes of 28 U.S.C. § 2401(b). It is well established that presentment occurs when the federal agency receives the claim. *See, e.g.*, *Anderberg v. United States*, 718 F.2d 976, 977 (10th Cir. 1983). Further, the parties agree—as does the Court—that presentment occurred for purposes of Plaintiff's claims on February 15, 2011, when the BOP received Plaintiff's SF-95.

The parties do dispute, however, whether the claim accrued within two years of presentment: in other words, there is a dispute whether the claim accrued on or after February 15, 2009. Further, determining the date of accrual is a more complicated matter in a medical malpractice case. As to this question, in *United States v. Kubrick,* 444 U.S. 111 (1979), the Supreme Court reasoned that "the general rule under the [Federal Tort Claims] Act has been that a tort claim accrues at the time of the plaintiff's injury." *Id.* at 120. At the same time, "the [*Kubrick*] Court found an exception in medical malpractice and latent injury cases, adopting therein the 'discovery rule.'" *Plaza Speedway Inc. v. United States*, 311 F.3d 1262, 1267 (10th Cir. 2002).

As the Tenth Circuit has reasoned, "the discovery rule, which holds a claim does not accrue until the injured party knows of both the existence and cause of the injury, is followed to protect plaintiffs who are blamelessly unaware of their claim because the injury has not yet manifested itself or because the facts establishing a causal link

6

between the injury and the medical malpractice are in the control of the tortfeasor or otherwise not evident." *Id.* (internal quotation marks omitted).

Further, as the Tenth Circuit has noted, "in misdiagnosis cases, the relevant injury for accrual is the injury that is caused by the misdiagnosis and lack of treatment, not the pre-existing injury that brought the patient to the doctor's door." *Harvey v. United States*, 685 F.3d 939, 949 (10th Cir. 2012). Under such circumstances, "it is only when the patient becomes aware or through the exercise of reasonable diligence should have become aware of the development of a pre-existing problem into a more serious problem that his cause of action can be said to have accrued for purposes of section 2401(b)." *Id.* (quotation marks and citations omitted).

### B. APPLICATION

Defendant contends that Plaintiff's claim accrued on December 30, 2008, when he received his medical records, or alternatively on February 9, 2009, when he had a recurrence of symptoms he had had back in 2005. Because both of these dates are more than two years before February 15, 2011, Defendant concludes that Plaintiff's claims are barred pursuant to 28 U.S.C. § 2401(b).

The Court finds that, for purposes of summary judgment, there is insufficient evidence to support Defendant's contention that Plaintiff's claims accrued on or prior to either of these dates. First, there is little evidence to establish that Plaintiff's claim accrued on December 30, 2008, when Plaintiff received his medical records. There is no indication that the records received on this date contained any information suggesting that Plaintiff had suffered from kidney cancer. Indeed, this Court is at a loss to determine what exactly was contained in the records obtained on December 30

because this information has not been provided in Defendant's motion.  In a similar vein, there is no evidence in the record that Plaintiff was on notice of a causal link between the injury alleged here—worsening kidney cancer—and the medical misdiagnosis that allegedly caused it.  Rather, the evidence—at least as presented—establishes that *no one* knew Plaintiff had kidney cancer on December 30.[1]

Defendant alternatively asserts that Plaintiff's claim accrued on February 9, 2009, "when he had another episode of hematuria shortly before his kidney cancer diagnosis" because he passed blood in his urine and was unable to urinate for several hours. (Doc. #34 at 12.)  Defendant notes that "the 2009 episode was very similar to his 2008 symptoms" and concludes that Plaintiff's "knowledge of these facts should have alerted him that his prior condition had developed into a worse one." (*Id.* (internal quotation marks omitted).)

This argument fails for a number of reasons.  First, Defendant's position appears to mischaracterize the injury alleged by Plaintiff, which concerns worsening kidney cancer, not a mistreated hematuria.  Second, Defendant provides no factual or legal support for its position that the presence of "very similar" symptoms would lead a reasonable person to conclude that a condition had "worsened" rather than merely manifested itself once again.[2]

---

[1] Defendant also stresses that Plaintiff did not immediately send his medical file to an attorney or doctor.  As Plaintiff testified, he requested the file "to see if there was any wrongdoing."  (Doc. # 34-3 at 6).  But in light of the fact that the medical file on this date did not contain any information about worsening symptoms or kidney cancer, it is unclear to this Court what effect Plaintiff's decision has on this case.

[2] Defendant cites *Arvayo v. United States* for the proposition that a plaintiff has "an affirmative duty to exercise reasonable diligence in inquiring about the cause of the injury."  766 F.2d 1416, 1422 (10th Cir. 1985).  *Arvayo* is distinguishable from the instant case.  In *Arvayo*, the plaintiffs received two different diagnoses of their son's medical condition in a twenty-four hour period.

Third, Defendant points to no evidence to dispute Plaintiff's contention that he learned about the kidney cancer on February 17, 2009, regardless of whether doctors had diagnosed the cancer prior to this date. (Doc. # 8, at 2.) Further, this Court is inclined to think that the earliest possible date that this claim could have accrued is on the date that the Plaintiff knew of the specific injury he alleges was caused by Defendant's negligence.

Fourth, regardless of the date Plaintiff learned he had cancer, Defendant supplies no evidence and little legal authority explaining why, at the moment Plaintiff learned he had kidney cancer, he could also establish a causal connection between the cancer and the medical misdiagnosis that allegedly caused it.

Therefore, because Defendant's two alternative arguments regarding the proper accrual date are insufficiently supported by the evidence presented, this Court denies Defendant's motion. Defendant, however, is not precluded from marshalling further evidence and legal authority in support of these or other defenses to liability prior to and at trial.

## IV.  CONCLUSION

For the foregoing reasons, it is ORDERED that Defendant's Motion to Dismiss (Doc. # 34) be DENIED.

---

*Id.* at 1422.  Under these circumstances, the *Arvayo* court held that is was unreasonable not to inquire about the discrepancy in diagnoses.  *Id.*  Here, Plaintiff did not have contradicting medical diagnoses.  Moreover, there is no indication that he should have suspected a different diagnosis or worsening medical condition simply because he experienced similar symptoms after the initial diagnosis of kidney stones and a urinary tract infection.

DATED: December 29, 2013

                                BY THE COURT

                                _____
                                Christine M. Arguello
                                United States District Judge